# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DEBRA HENDRIX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-170-JHP-KEW |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Debra Hendrix (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 57 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a receptionist and hair stylist. Claimant alleges an inability to work beginning September 1, 2012 due to limitations resulting from polycystic kidney disease, degenerative disc disease, fibromyalgia, depression, high blood pressure, hearing loss, chronic renal failure, and obesity.

**Procedural History**

On January 15, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On September 24, 2014, Administrative Law Judge Kim Parrish ("ALJ") conducted a hearing in Oklahoma City, Oklahoma. On December 15, 2014, the ALJ issued an unfavorable decision. On March 22, 2016, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate Claimant's obesity and pain; (2) failing to include all limitations associated with Claimant's hearing impairment in the RFC; and (3) improperly relying upon an exhibit from a medical professional which is allegedly illegible.

### Consideration of Claimant's Obesity and Pain

In his decision, the ALJ determined Claimant suffered from the severe impairments of chronic renal failure (with anemia and uremia), polycystic kidney disease, degenerative disc disease, and obesity. (Tr. 12). After consulting with a vocational expert, the ALJ concluded that Claimant retained the RFC to perform her past relevant work as a receptionist and a hair stylist. (Tr. 18). He also found Claimant could perform light work except that Claimant was limited to occasionally stooping and kneeling. (Tr. 15). As a result, the ALJ found Claimant was not disabled from September 1, 2012 through the date of the decision. (Tr. 19).

Claimant contends the ALJ failed to properly evaluate the effects of her obesity and pain upon her ability to work. The ALJ found Claimant's obesity to be a severe impairment at step two. (Tr. 12). He went beyond simply boilerplate language, noting Claimant's body mass index which put her in the obese category and the standards for consideration of the combined effects of obesity and other conditions, citing Soc. Sec. R. 02-01p. He stated that he considered the effects of Claimant's obesity at each step of the sequential evaluation process, including the listings and the RFC. (Tr. 12).

While Claimant protests that the ALJ should have evaluated her obesity's effect upon her other conditions with more detail, she

5

fails to indicate where the evidence in the medical record directs a greater level of limitation because of this condition. An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments).

At step three, "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." Soc. Sec. R. 02-1p. "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the case record. Id. However, speculation upon the effect of obesity is discouraged.[2] *See*, Fagan v. Astrue, 2007 WL 1895596, 2 (10th Cir.).

---

[2] "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." Soc. Sec. R. 02-01p.

6

The ALJ stated in his decision that he considered the combined effects of obesity upon other impairments under the requirements of Soc. Sec. R. 02-1p. (Tr. 12). This Court is required to take the ALJ at his word that he considered the condition without speculating as to its effects. Indeed, the medical record does not indicate and Claimant has not directed this Court to the presence of any functional limitations which would stem from Claimant's obesity. The diagnosis of the condition does not automatically translate into functional limitations. See e.g. Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.) The ALJ did not err in his consideration of Claimant's obesity.

Claimant also contends the ALJ failed to consider the effect of her claims of pain upon her ability to engage in basic work activities. Specifically, Claimant asserts her polycystic kidney disease ("PKD") and degenerative disk disease cause severe back pain which restricts her ability to work. Claimant mischaracterizes the evidence on these conditions. She states that her "kidneys with stones on the right the biggest measuring 4.5 cm and on the left the largest of which is 6 cm . . . ." She then describes the condition in stating, "[k]idney stones are frequently

described as (sic) excruciating pain worse than childbirth for a woman", citing to an internet site. Cl. Brief at p. 3. The medical evidence does not indicate Claimant ever had kidney stones. Rather, the imaging indicates Claimant's kidneys were both enlarged and polycystic, but with "no solid mass, obstruction or stone." (Tr. 323).

Claimant's PKD condition causes kidney cysts which, when enlarged and "fixing to rupture", caused Claimant's back to start hurting. (Tr. 38-40). She indicated at the hearing that "[i]t doesn't happen that often" but that her back starts hurting two or three months before it occurs. (Tr. 40).

The ALJ determined Claimant's PKD constituted a severe impairment at step two of the sequential evaluation. As a result of this and other conditions, the ALJ limited the weight Claimant could lift/carry and the amount of time she could walk/stand. He also limited her to only occasional stooping and kneeling. (Tr. 12). These restrictions coincided with Claimant's testimony that her back pain was worsened by stooping, bending, and lifting. (Tr. 39). Perhaps most telling was the ALJ's finding that Claimant did not take pain medications consistently. (Tr. 18). Claimant only testified to taking over the counter Tylenol medication "once in a while". (Tr. 39). The ALJ reasonably concluded that Claimant did

8

not suffer from debilitating pain which precluded all work.

Claimant also references various other conditions which she contends affected her ability to perform at the RFC designated by the ALJ. She asserts the ALJ should have shown "some consideration" to her pedal edema, hypertension, and fluid retention. Again, she does not refer to any medical record which would indicate these conditions affect her ability to engage in basic work activity. To reach the conclusion urged by Claimant would be to give credence to rank speculation.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the

regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

**Consideration of Claimant's Hearing Condition**

Claimant asserts the ALJ failed to adequately account for her hearing loss. Claimant suffered from a hearing loss and middle ear infection in April of 2010. (Tr. 273-74). She was treated and the middle ear condition cleared. (Tr. 278). Claimant again overstated her condition in her briefing. She stated that she had a perforated eardrum. The medical record does not reflect this condition. Claimant does wear hearing aids but failed to indicate any functional limitations which remained while wearing the devices. No further restrictions were required in the RFC based upon her alleged hearing loss. *See* 20 C.F.R. § 404.1512(a), (c).

Claimant also contends the ALJ failed to consider her "legal blindness." The ALJ acknowledged that Claimant claimed she wore glasses and was legally blind. (Tr. 14, 444). The ALJ relied upon Claimant's statements to Dr. Kathie Ward, a consultative examiner, wherein she was able to perform her past work with the use of expensive glasses and rest to be able to focus. (Tr. 444). The ALJ also relied upon the findings of Dr. John D. Kasti, an optometrist,

who the ALJ states did not find Claimant to be blind. (Tr. 14-15, 341). Claimant "challenges" the Court to read the largely illegible exhibit from Dr. Kasti. Claimant's unnecessary hyperbole notwithstanding, the record is devoid of evidence of uncorrected "blindness" which would preclude Claimant from engaging in basic work activity. Indeed, Claimant did not testify that her "blindness" constituted one of the impairments she was claiming in these proceedings. The ALJ did not err in rejecting this condition as a severe impairment which would affect the RFC.

Claimant intimates that the ALJ should have recontacted Dr. Kasti or obtained further consultative professional evaluations of Claimant's eyesight. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come

to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.
>
> 20 C.F.R. § 416.909a(2)(b).

None of these bases for ordering a consultative examination exists in the record. The ALJ did not violate his duty to develop the record by not ordering further medical evaluations.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 11th day of September, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE